UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

FILED

2016 FEB 16  P 12: 30

US DISTRICT COURT
HARTFORD CT

------------------------------------------
ESTATE OF LASHANO GILBERT,                )

           Plaintiff                )

V.                                        )

NEW LONDON POLICE DEPARTMENT,             )

LAWRENCE + MEMORIAL HOSPITAL, INC.,       )

CITY OF NEW LONDON,                       ) Civil Action No. 3:16CV241

DR. DEIDRE CRONIN-VORIH                    )                  MPS

    A/K/A DR. DEIDRE CRONIN,              )

OFFICER PATRICIA TIDD,                    )

OFFICER MELISSA SCHAFRANSKI- BROADBENT,  )

SERGEANT SCOTT JOHNSON,                   )

SERGEANT KRISTY CHRISTINA,                )

OFFICER KURT LAVIMONIERE,                 )

OFFICER DOREEN COE,                       )

OFFICER RICHARD CABLE,                    )

OFFICER WAYNE NEFF,                       )

OFFICER CHRISTOPHER BUNKLEY               )

OFFICER CHRIS WHITE                       )

    A/K/A OFFICER CHRISTOPHER WHITE,      )

           Defendants                )
------------------------------------------)

**COMPLAINT**

## STATEMENT OF JURISDICTION

At the time of his death, Lashano Gilbert (hereinafter referred to as "Gilbert") was a citizen and legal resident of Nassau, Bahamas. The incident giving rise to the cause of action took placed in New London, Connecticut. The named defendants include the City of New London, the New London Police Department, and, several agents, employees and officers of the New London Police Department, all of whom are located in New London Connecticut. This District Court has original jurisdiction of this matter as the cause of action is one which arises out of federal question. The claims asserted by the Plaintiff Estate of Lashano Gilbert allege a violation of Gilbert's Fourteenth Amendment Constitutional Right, brought through federal statute 42 USC § 1983. The District Court has Diversity Jurisdiction over the Malpractice claim, and the Wrongful Death claim as no plaintiff resides from the same state as any defendants, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs. Under federal statute 28 U.S. Code § 1367, for supplemental jurisdiction, the Court would also have jurisdiction over the state claims against Lawrence + Memorial Hospital, Inc., (here-in-after "Lawrence + Memorial Hospital") of 365 Montauk Avenue, New London, CT 06320, and, Dr. Deidre Cronin-Vorih AKA Dr. Deidre Cronin, (here-in-after Dr. Cronin-Vorih), who was working at Lawrence + Memorial Hospital

at the time the cause of action occurred. The State-law claims are so related to the Federal Question claims that they form part of the same case and controversy.

## STATEMENT OF CLAIM

### FACTS

1. At all times mentioned herein, the defendant City of New London was a municipality organized under the laws of the State of Connecticut.

2. At all times mentioned herein, the defendant New London Police Department is an agency and/or entity under of the defendant City of New London.

3. At all times mentioned herein, defendant Officer Kurt Lavimoniere, defendant Sergeant Scott Johnson, defendant Sergeant Kristy Christina, defendant Officer Melissa Schafranski-Broadbent, defendant Officer Doreen Coe, defendant Officer Wayne Neff, defendant Officer Chris White AKA Officer Christopher White, defendant Officer Christopher Bunkley and defendant Officer Richard Cable (hereinafter collectively referred to as "New London Police Officers") were employees and/or agents of the defendant New London Police Department, and acting within the scope of their employment.

3

4. Gilbert was born on March 2, 1983.

5. Gilbert was a medical doctor by occupational trade.

6. Gilbert arrived in New London, Connecticut on the evening of October 2, 2014.

7. Upon his arrival, he went to his aunt's, Bertha Fletcher (hereinafter "Ms. Fletcher"), home located on 105 Garfield Avenue in New London, Connecticut.

8. Gilbert stayed at Ms. Fletcher's home the night of October 2, 2014.

9. On October 3, 2014, at approximately 7:00 p.m., Gilbert was observed acting strangely by Kathryn Arruda (hereinafter "Arruda"). Gilbert appeared to be speaking to himself in an unrecognizable, and unintelligible, language as he walked across Williams Park in New London, Connecticut.

10.    A 1998 white Acura was stopped at a red light located on Williams Street and Broad Street at a designated crosswalk.

11.    The said Acura was driven by Arruda.

12.    Arruda yelled something out the window at Gilbert as she observed him acting strangely in the park.

13.    Gilbert walked across Williams Street at the designated crosswalk, located at the intersection of Williams Street and Broad Street.

4

14.   Gilbert reached the other side of the street, then ran

back towards said vehicle, and jumped head first through

the open window.

15.   The said vehicle proceeded down Williams Street and

crossed over Broad Street.

16.   Gilbert at some point was completely inside said

vehicle.

17.   While in the vehicle, Gilbert continued speaking

unintelligibly, and made stabbing motions at Arruda,

although he had no knife, or tangible instrument in his

hand.

18.   At approximately 7:06 p.m., while Gilbert was still in

the vehicle, Arruda called 911 indicating that a "crazy

dude," whom she did not know, jumped in the vehicle

speaking "gibberish", and pretended to stab her.

19.   Arruda told 911 dispatch that she was not injured and

declined medical assistance.

20.   Defendant Officer Kurt Lavimoniere (hereinafter

"Officer Lavinomiere") was the first responding officer to

the scene.

21.   Subsequent to defendant Officer Lavimoniere's arrival,

a Sergeant Keating, an Officer Nichols and an Officer Ryan

Griffin arrived at the scene.

22.    Gilbert was still noticeably in an altered mental state, as he spoke to himself in an unrecognizable and unintelligible language.

23.    Officer Lavimoniere advised Arruda that Gilbert was not in his right mind.

24.    Officer Lavimoniere withdrew his taser and ordered Arruda to back away because he did not want her to be hit with the taser.

25.    Gilbert was tased at least twice during this incident.

26.    Gilbert told police officers, that were on the scene, that as he walked by a cemetery, a ghost jumped out of the cemetery and went into his stomach.

27.    Gilbert stated that he became terrified and jumped into said vehicle to try to get help.

28.    Gilbert went on to say that the ghost told him that it would take his life if he did not bring the ghost to a cemetery in the Bahamas.

29.    Gilbert was placed in handcuffs and placed in an ambulance where he continued to act in an altered mental state.

30.    Fire personnel were dispatched to the scene on Williams Street for a "patient with a psychological problem."

6

31.     Gilbert was accompanied by Officer Ryan Griffin during
        Gilbert's transport to defendant Lawrence + Memorial
        Hospital.

32.     Gilbert arrived at defendant Lawrence + Memorial
        Hospital at approximately 8:00 p.m.

33.     Gilbert was clearly in a state of delirium when he
        arrived at the defendant Lawrence + Memorial Hospital
        emergency room.

34.     Gilbert's mentation was altered, he was having
        hallucinatory delusions, he was rapidly alternating between
        extreme agitation and periods of calm, he was tachycardic,
        and he was febrile.

35.     Initially, Gilbert was placed in four point
        restraints, due to his altered mentation, evidence by him
        speaking in an unidentifiable language, flailing his body,
        and combative behavior.

36.     Gilbert told defendant Officer Patricia Tidd
        (hereinafter referred to as "Officer Tidd" that before he
        jumped into Arruda's vehicle, he was feeling scared and
        thought someone was out to get him.

37.     Gilbert was seen by Dr. Cronin-Vorih.

38.    Gilbert's initial vital signs indicated he had a fever of 100.4 degrees, tachycardia (fast heart rate), and was hypertensive.

39.    Physicians and nurses, of the defendant Lawrence + Memorial Hospital, described Gilbert's behavior as erratic, agitated, and alternating between periods of calmness and severe agitation, with yelling and speaking non-sensically.

40.    Eventually, Gilbert calmed down while at the defendant Lawrence + Memorial Hospital, and his restraints were loosened and removed by defendant Officer Tidd.

41.    Gilbert was initially not responsive to questions and alternated between periods of calmness and yelling, screaming and thrashing.

42.    Defendant Lawrence + Memorial Hospital's medical professionals did not perform blood work on Gilbert.

43.    Defendant Lawrence + Memorial Hospital's medical professionals did not perform a toxicology screen on Gilbert.

44.    Defendant Lawrence + Memorial Hospital's medical professionals did not perform a CT scan of the brain on Gilbert.

45.    Defendant Lawrence + Memorial Hospital's medical professionals did not perform a lumbar puncture on Gilbert.

46.   Defendant Lawrence + Memorial Hospital's medical professionals did not perform a psychiatric examination on Gilbert.

47.   Defendant Lawrence + Memorial Hospital's medical professionals did not sedate Gilbert in order to perform the appropriate tests.

48.   During one of Gilbert's states of calmness, he told defendant Lawrence + Memorial Hospital's medical professionals that his aunt got angry with him and put a spell on him.

49.   The high-risk Gilbert was released from defendant Lawrence + Memorial Hospital back into the sole custody of the defendant New London Police Department at approximately 10:00 p.m.

50.   During Gilbert's transport back to the police station, he asked to cover his head because he did not want his aunt to be able to pull out his hair.

51.   Gilbert continued to behave in a state of delirium.

52.   Defendant Sergeant Kristy Christina advised defendant Scott Johnson of Gilbert's irrational and bizarre behavior.

53.   During Gilbert's booking process, Gilbert repeated that he did not want his aunt to pull his hair out and tried to cover his head with his hospital gown.

54.    Gilbert stated numerous times that he needed a scarf
       because his aunt keeps touching his head, although his aunt
       was not present at the police station.

55.    While Gilbert was in his cell, he again began chanting
       in an unknown language, and rocked back and forth on a
       bench.

56.    No one from the defendant New London Police Department
       contacted a hospital or any other psychiatric or medical
       professional, although Gilbert displayed a significant need
       for medical attention.

57.    While in police custody Gilbert was provided a pair of
       jeans.

58.    Defendant Officer Lavimoniere and defendant Sergeant
       Scott Johnson entered Gilbert's cell and a conversation
       occurred between themselves and Gilbert.

59.    Shortly after the conversation, a physical altercation
       ensued between Gilbert and defendant New London Police
       Officers.

60.    After a struggle, the defendant New London Police
       Officers were able to subdue Gilbert, and had Gilbert under
       complete control.

61.    Gilbert was subsequently handcuffed and shackled.

10

62.    Defendant New London Police Officers continued to apply immense pressure on Gilbert on Gilbert's smaller frame.

63.    Officers, including defendant Officer Doreen Coe, continued to taser and Oleoresin Capsicum spray Gilbert.

64.    Gilbert told the defendant New London Police Officers that he could not breathe.

65.    Defendant New London Police Officers deliberately ignored Gilbert's plea for help, and continued to apply pressure, while tasing and spraying Gilbert with Oleoresin Capsicum.

66.    Defendant New London Police Officers continued to apply a substantial amount of weight on Gilbert, and tased him, although he was not moving and became nonresponsive.

67.    Officers, including Officer Chris White AKA Officer Christopher White, wrapped a towel tightly around Gilbert's entire face, mouth and head area.

68.    Gilbert died in the custody of defendant New London Police Department and defendant New London Police Officers.

69.    Immediately after, Gilbert's body was placed in an ambulance, it was checked for a pulse, and no pulse could be located.

70.    Efforts of resuscitation were ineffective.

71.   On October 3, 2014 at 3:23 a.m., Gilbert was
pronounced dead by a Dr. Melissa L. Monte at defendant
Lawrence + Memorial Hospital.

72.   The Connecticut office of the Chief Medical Examiner
autopsy report ruled Gilbert's manner of death to be a
homicide, and the cause of death as "Physical Alteration
(Restraint, Electric Shock, Pepper Spray) During Acute
Psychosis Complication Sickle Cell Hemaglobinopathy."

<u>**COUNT ONE**</u>

<u>(Estate of Lashano Gilbert v. Defendant City of New London,</u>
<u>Defendant New London Police Department and Defendant New London</u>
<u>Police Officers)</u>

42 USC § 1983 – Violation of Plaintiff's Fourteenth Amendment
Right to due process, deliberate indifference and inattention to
medical/mental health care needs of a pretrial detainee,
subjecting plaintiff to cruel and unusual punishment.

1. Facts 1-72.

2. Gilbert displayed an obvious serious medical/mental health
care need.

3. Gilbert's severe mental health care need is one that could
have endangered himself and/or others.

4. Defendant City of New London, Defendant New London Police
Department, and Defendant New London Police Officers had

personal knowledge that Gilbert was in severe need of mental health care.

5. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers had continuous chain of observation of Gilbert, from the initial dispatch, until his death.

6. Gilbert's display of a serious need for medical care continuously persisted after his initial discharge from defendant Lawrence + Memorial Hospital until his time of death.

7. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers showed a deliberate indifference to Gilbert's serious need of mental health care.

8. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to contact medical staff or medical/psychological professionals after learning of and/or observing Gilbert displaying a need for mental health care.

9. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to transport Gilbert to receive medical/mental health care.

10.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to provide Gilbert with adequate health care.

11.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to provide a system of ready access to adequate mental health care to Gilbert.

12.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers demonstrated a lack of adequate mental health screening which commenced when he was first transferred back into police custody and continued during intake at the defendant New London Police Department, and while Gilbert was in his cell.

13.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to afford Gilbert his right to reasonable safety and created conditions that posed an unreasonable risk of future harm for Gilbert.

14.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers maliciously and sadistically applied force to Gilbert for the purpose of causing harm.

15.    Supervisory staff of defendant New London Police department showed a deliberate indifference to their subordinates' use of force and failed to intervene.

16.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers recklessly disregarded Gilbert's serious need for mental health care, and subjected Gilbert to a substantial risk of harm.

17.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officer's actions of deliberately denying a detainee who is suffering from a mental ailment and displaying a serious need for medical/mental health care is unconscionable by today's societies standards and not one in which society would choose to tolerate.

18.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officer's actions constitute inhumane treatment and violates the basic concept of Gilbert's dignity.

19.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to handling of "Mentally Ill or Gravely Disabled persons."

15

20.    Defendant City of New London, Defendant New London
       Police Department, and Defendant New London Police Officers
       failed to perform and misperformed defendant New London
       Police Department's policies pertaining to "Communications:
       Emergency Medical Dispatch."

21.    Defendant City of New London, Defendant New London
       Police Department, and Defendant New London Police Officers
       failed to perform and misperformed defendant New London
       Police Department's policies pertaining to handling of
       "Communications: Emergency Notification System."

22.    Defendant City of New London, Defendant New London
       Police Department, and Defendant New London Police Officers
       failed to perform and misperformed defendant New London
       Police Department's policies pertaining to handling of
       "Prisoner: Handling and Supervision."

23.    Defendant City of New London, Defendant New London
       Police Department, and Defendant New London Police Officers
       failed to perform and misperformed defendant New London
       Police Department's policies pertaining to handling of
       "Prisoner: Monitoring."

24.    Defendant City of New London, Defendant New London
       Police Department, and Defendant New London Police Officers
       failed to perform and misperformed defendant New London

Police Department's policies pertaining to "Temporary

Safekeeping and Return of Property."

25.    Defendant City of New London, Defendant New London

Police Department, and Defendant New London Police Officers

failed to perform and misperformed defendant New London

Police Department's policies pertaining to "Aggressive

Subjects."

26.    Defendant City of New London, Defendant New London

Police Department, and Defendant New London Police

Officer's actions are the direct and proximate cause of

Gilbert's damages.

27.    The Plaintiff's damages include:

a. Wrongful death;

b. Unneeded physical pain and suffering;

c. Mental and emotional pain and suffering;

d. Diminution and loss of the ability to enjoy life's

   pleasures;

e. The reasonable and necessary medical and funeral

   expenses;

f. Destruction of earning capacity;

g. Compensation for the death itself; and

h. Loss of future earnings.

**COUNT TWO**

(Estate of Lashano Gilbert v. Defendant City of New London, Defendant New London Police Department and Defendant New London Police Officers)

42 USC § 1983- 14th Amendment, Due Process Clause against excessive use of force.

1. Facts 1-72.

2. Gilbert was a pretrial detainee at the time of the incident giving rise to the cause of action.

3. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers applied excessive force amounting to punishment on Gilbert.

4. The force that the Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers, subjected Gilbert to, was applied maliciously, and sadistically, to cause harm.

5. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers caused harm to Gilbert which violated contemporary standards of decency.

6. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers continued to apply force (pepper spray, tasing, suffocation, knees to the back legs, head and excessive

amounts of weight) on Gilbert after he was completely subdued, compliant, and offered no further resistance.

7. Gilbert informed police several times that could not breathe and police displayed a deliberate indifference, ignored and rebuffed Gilbert's plea and continued to apply said force.

8. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officer's continued application of said force after Gilbert was subdued, and repeatedly complaining that he was unable to breathe, was unreasonable.

9. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police Department's policies pertaining to "Use of Force."

10.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police Department's policies pertaining to "Oleoresin Capsicum Spray."

11.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police

Department's policies pertaining to "Conducted Electrical Weapon."

12.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police Department's policies pertaining to handling of "Prisoner: Handling and Supervision."

13.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police Department's policies pertaining to handling of "Prisoner: Monitoring."

14.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed New London Police Department's policies pertaining to "Aggressive Subjects."

15.     Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officer's use of force is the direct and proximate cause of Gilbert's damages.

16.     The Plaintiff's damages include:

a. Wrongful death;

b. Unneeded physical pain and suffering;

c. Mental and emotional pain and suffering;

d. Diminution and loss of the ability to enjoy life's pleasures;

e. The reasonable and necessary medical and funeral expenses;

f. Destruction of earning capacity;

g. Compensation for the death itself; and

h. Loss of future earnings.

## COUNT THREE

(Estate of Lashano Gilbert v. Defendant Lawrence + Memorial Hospital, Inc. and Defendant Dr. Deidre Cronin-Vorih aka Dr. Deidre Cronin)

Medical Malpractice

1. Facts 1-72.

2. The standard of care for treatment in this instance required defendant Lawrence + Memorial Hospital and defendant Dr. Cronin-Vorih to attempt to establish a cause of the delirium, which in this case would have required blood work, a toxicology screen, a CT scan of the brain, and possibly a lumbar puncture.

3. Defendant Lawrence + Memorial Hospital and defendant Dr. Cronin-Vorih deviated from that standard of care in that they:

a. Failed to attempt to establish a cause of the delirium.

b. Failed to do a blood workup.

c. Failed to perform a toxicology screen.

d. Failed to perform a CT scan of the brain.

e. Failed to perform a lumbar puncture.

f. Failed to sedate Gilbert to administer appropriate medical testing.

g. Under the standard, the performance of these tasks were the only way that Gilbert could be appropriately medically cleared for transport back to the police station.

4. Defendant Lawrence + Memorial Hospital and defendant Dr. Cronin-Vorih's breach of duty from the requisite standard of care is the direct and proximate cause of Gilbert's injuries.

5. The Plaintiff's damages include:

a. Wrongful death;

b. Unneeded physical pain and suffering;

c. Mental and emotional pain and suffering;

d. Diminution and loss of the ability to enjoy life's pleasures;

e. The reasonable and necessary medical and funeral expenses;

f. Destruction of earning capacity;

g. Compensation for the death itself; and

h. Loss of future earnings.

## Count Four

(Estate of Lashano Gilbert v. Defendant City of New London,

Defendant New London Police Department and Defendant New London

Police Officers)

Wrongful Death

1. Fact 1-72.

2. Defendant City of New London, Defendant New London Police
   Department, and Defendant New London Police Officers, have
   a duty to not cause imminent risk of harm to an
   identifiable person.

3. Defendant City of New London, Defendant New London Police
   Department, and Defendant New London Police Officers have a
   duty to not misperform ministerial acts.

4. Defendant City of New London, Defendant New London Police
   Department, and Defendant New London Police Officers
   breached said duty by providing a potentially dangerous
   instrument to a known and documented gravely disabled
   person.

5. Defendant City of New London, Defendant New London Police
   Department, and Defendant New London Police Officers failed
   to perform and misperformed defendant New London Police

Department's policies pertaining to handling of "Mentally Ill and Gravely Disabled persons."

6. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Oleoresin Capsicum Spray."

7. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Conducted Electrical Weapon."

8. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendants New London Police Department's policies pertaining to "Communications: Emergency Medical Dispatch."

9. Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to handling of "Communications: Emergency Notification System."

10.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers

failed to perform and misperformed defendant New London Police Department's policies pertaining to handling of "Pre Trial Detainee/Prisoner: Handling and Supervision."

11.   Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to handling of "Pre Trial Detainee/Prisoner: Monitoring."

12.   Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Security and Control."

13.   Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to handling of "Pre Trial Detainee/Prisoner: With Medical Needs."

14.   Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Pre Trial Detainee/Prisoner: Restraint Chair."

15.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Temporary Safekeeping and Return of Property."

16.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers failed to perform and misperformed defendant New London Police Department's policies pertaining to "Aggressive Subjects."

17.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers showed a deliberate indifference to Gilbert's serious need of mental health care.

18.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers applied excessive force amounting to punishment on Gilbert.

19.    The force that the Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers subjected Gilbert to was applied maliciously and sadistically to cause harm.

20.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers

caused harm to Gilbert, which violated contemporary standards of decency.

21.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers continued to apply force (pepper spray, tasing, suffocation, knees to the back legs, head and excessive amounts of weight) on Gilbert after he was completely subdued, compliant, and offering no further resistance.

22.    Gilbert informed police several times that he could not breathe and Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officers displayed deliberate indifference, ignored and rebuffed Gilbert's plea, and continued to apply said force.

23.    Defendant City of New London, Defendant New London Police Department, and Defendant New London Police Officer's actions are the legal, proximate, and direct cause of Gilbert's damages.

24.    The Plaintiff's damages include:

a. Wrongful death;

b. Unneeded physical pain and suffering;

c. Mental and emotional pain and suffering;

d. Diminution and loss of the ability to enjoy life's pleasures;

e. The reasonable and necessary medical and funeral

  expenses;

f. Destruction of earning capacity;

g. Compensation for the death itself;

h. Loss of future earnings.

## DEMAND FOR RELIEF

WHEREFORE: The plaintiff request money damages against the

defendants in excess of fifty-four million dollars

($54,000,000.00) and such other and further relief as the court

deems fair and equitable.

2/16/2016.

Date                         Jamaal T. Johnson, Esq.
                             The Law Office of JT Johnson, L.L.C.
                             1229 Albany Ave. Ste. 301
                             Hartford, CT 06112
                             jamaal_johnson@jtjohnsonlaw.com
                             (p) (860)278-1000
                             (f) (860)278-1002
                             Juris #: 432872
                                 (ct 2970)