## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALBERTHA FLETCHER and DONNA SMITH, Administrators of the Estate of Lashano Gilbert<br>        Plaintiffs,<br><br>        v.<br><br>CITY OF NEW LONDON, et al.<br>        Defendants. | No. 3:16-cv-241 (MPS) |

## RULING AND ORDER

### I.    Introduction

      This case arises out of the death of a young man named Lashano Gilbert, who died in police custody on October 4, 2014, in New London, Connecticut. The plaintiff named in the original complaint was the Estate of Lashano Gilbert (the "Estate"), and the complaint has since been amended to substitute Albertha Fletcher and Donna Smith, the Estate's administrators. Plaintiffs bring claims against ten police officers and the City of New London ("Police Defendants") for wrongful death, negligence, and violations of the Fourteenth Amendment. They also bring claims of medical malpractice and wrongful death against a doctor, Deirdre Cronin-Vorih, who examined Mr. Gilbert in the Lawrence and Memorial Hospital emergency room hours before his death, as well as against Lawrence and Memorial Hospital and Lawrence and Memorial Corporation ("Hospital Defendants").

      The Police Defendants, Hospital Defendants, and Dr. Cronin-Vorih have all filed motions to dismiss the case for lack of subject matter jurisdiction, because the original complaint was improperly filed in the name of the "Estate of Lashano Gilbert" rather than in the name of its administrators. (ECF Nos. 57, 58 62, 63, 64.) The Hospital Defendants and Dr. Cronin-Vorih

separately assert that the complaint against them should be dismissed for lack of an adequate medical opinion letter. (ECF Nos. 26, 29.) And the Hospital Defendants claim that they cannot be held liable for Dr. Cronin-Vorih's actions because the complaint does not adequately allege that she was their agent. (ECF No. 29.) Finally, Dr. Cronin-Vorih and the Hospital Defendants filed motions to sever the case against them from the case against the Police Defendants. (ECF Nos. 39, 40.) For the reasons set forth below, I DENY all motions, except that I dismiss the claims against Lawrence and Memorial Corporation because the plaintiffs conceded that there is no basis on which to hold that entity liable and stated at oral argument that they intended to drop Lawrence and Memorial Corporation from the complaint.

## II.     Background

According to the allegations in the operative complaint, dated November 11, 2016, Lashano Gilbert was a young medical doctor[1] from the Bahamas who arrived in New London, Connecticut, on the evening of October 2, 2014, to stay with his aunt. (ECF No. 56 ¶¶ 3, 8-11.) On October 3, 2014, at approximately 7:00pm, Mr. Gilbert jumped through the window of a car that was stopped at a red light, speaking unintelligibly and making stabbing motions at the driver. (*Id.* ¶¶ 12-21.) The driver called 911, the police arrived, and officers shot Mr. Gilbert with a taser at least twice. (*Id.* ¶¶ 21-28.) The police officers then brought Mr. Gilbert to Lawrence and Memorial Hospital. (*Id.* ¶¶ 34-35.) Throughout his time with the police, during transport, and in the hospital, Mr. Gilbert was in an obvious state of delirium. (*Id.* ¶¶ 25-26, 29-33, 36-39, 47, 54.) The delirium included talking to himself in an unidentifiable language, flailing his body, and describing hallucinations such as that a ghost jumped out of a cemetery and went into his stomach. (*Id.*)

---

[1] I refer to Lashano Gilbert as Mr. Gilbert for purposes of clarity, despite his medical training.

In the hospital emergency room, Mr. Gilbert was seen by emergency room doctor Deidre Cronin-Vorih and other medical professionals. (*Id.* ¶¶ 36, 40.) They observed that he had a fever, fast heart rate, and hypertension, in addition to the erratic behavior, but did not perform blood work, a toxicology screen, a CT scan, a lumbar puncture, or a psychiatric evaluation. (*Id.* ¶¶ 45-53.) At approximately 10:00 pm, Mr. Gilbert was discharged back into police custody, where he continued to behave in an erratic and delirious manner. (*Id.* ¶¶ 55-56.) The officers did not seek further medical treatment. (*Id.* ¶¶ 57, 62, 69-70.)

At the police station, Mr. Gilbert and police officers had a physical altercation. (*Id.* ¶ 75.) The officers subdued and shackled Mr. Gilbert. (*Id.* ¶¶ 76-77.) After he was subdued and shackled, nine police officers continued to apply force to him. (*Id.* ¶¶ 78-79, 81.) They also shot Mr. Gilbert with tasers and sprayed him with pepper spray. (*Id.*) Mr. Gilbert told the officers that he could not breathe, but they ignored him, continuing to apply pressure and wrapping a towel around his face. (*Id.* ¶¶ 80-83.) Mr. Gilbert died in the early morning hours of October 4, 2014, in police custody. (*Id.* ¶¶ 84-84, ECF No. 61-1 at 12.) The Connecticut Chief Medical Examiner ruled the death a homicide, identifying the cause of death as "Physical Altercation (Restraint, Electric Shock, and Oleoresin Capscium) During Acute Psychosis Complication Sickle Cell Hemaglobinopathy." (ECF No. 56 ¶ 88.)

On October 20, 2014, the New London Probate Court appointed Albertha Fletcher and Donna Smith as co-administrators of Mr. Gilbert's estate. (ECF No. 61-1 at 2, 9-10.) On February 16, 2016, the initial complaint in this case was filed, naming "Estate of Lashano Gilbert" as the plaintiff. (ECF No. 1.) The complaint was later amended to name Ms. Fletcher and Ms. Smith as the plaintiffs. (ECF No. 56.) The defendants have responded with motions to dismiss (ECF Nos.

26, 29, 57, 58, 62, 63, 64) [2] as well as motions to sever the case of the Hospital Defendants and Dr. Cronin-Vorih from the case of the Police Defendants (ECF Nos. 39, 40).  I held oral argument on several of these motions on November 14, 2016. (ECF No. 60.)

## III.   Rule 12(b)(1) Motions to Dismiss

### A.  Legal Standard

A motion to dismiss for lack of subject jurisdiction under Rule 12(b)(1) should be granted "when the district court lacks the statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  For example, "[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

### B.  Discussion

All defendants argue that this case must be dismissed for lack of subject matter jurisdiction. They claim that the Estate of Lashano Gilbert lacked capacity and lacked standing, and that these defects cannot be cured by substituting the Estate's administrators. I disagree: while the Estate lacked capacity and was not the real party in interest, it did have standing, and substitution is warranted under Federal Rule of Civil Procedure 17(a)(3).

#### 1.  *Standing, real party in interest, and capacity defined*

To begin with, it is worth delineating three distinct concepts involved here: "standing," "real party in interest," and "capacity." For a plaintiff to have standing under Article III's case-or-controversy requirement, the plaintiff must have suffered an "injury in fact" that is "fairly traceable

---

[2] Dr. Cronin-Vorih and the Hospital Defendants have filed three motions to dismiss each. Though their most recent filings did not specify whether they wished to incorporate prior briefing by reference, I nonetheless considered all briefing in making this ruling.

to the challenged action of the defendant" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992) (citations, quotation marks, and alterations omitted). Standing issues go to a court's subject matter jurisdiction and may be raised at any time.

On the other hand, the "real party in interest principle embodied in Rule 17 ensures that only a person who possesses the right to enforce a claim and who has a significant interest in the litigation can bring the claim." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411, 420 (2d Cir. 2015) (citation, quotation marks, and alteration omitted). "The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles." *Id.* at 421 (citation and quotation marks omitted). Not every party with standing is a real party in interest, although real parties in interest usually have standing. Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.).

Finally, capacity to sue or be sued under Rule 17(c) involves a party's personal right to litigate in federal court. For example, "it is possible to be the real party in interest and yet lack capacity to sue because a person has become mentally incompetent or is an infant." *Id.* Unlike issues of subject matter jurisdiction, which can be raised at any time, lack of capacity must be raised "by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a).

### 2. *The Estate lacked capacity and was not the real party in interest*

I agree with the defendants that the Estate of Lashano Gilbert lacked capacity to sue or be sued when it filed the initial complaint in this case. Except in situations not involved her, "[c]apacity to sue or be sued is determined… by the law of the state where the court is located."

Fed. R. Civ. P. 17(b). Under Connecticut law, "[a]n estate is not a legal entity. It is neither a natural nor artificial person, but is merely a name to indicate the sum total of the assets and liabilities of the decedent or incompetent. Not having a legal existence, it can neither sue nor be sued." *Rock v. Univ. of Connecticut*, 323 Conn. 26, 32 (2016) (citation, quotation marks, and alteration omitted).

Further, unlike the Estate administrators, the Estate itself was not the real party in interest. Rule 17 specifically lists "executors" "administrators," and "trustees" as examples of real parties in interest who "may sue in their own names without joining the person for whose benefit the action is brought," i.e., the estate or trust. "The purpose of the listing is to provide guidance in cases in which it might not be clear who the real party in interest is and to emphasize the fact that the real party in interest might not be the person beneficially interested in the potential recovery." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.). *See also Estate of Garcia-Vasquez v. Cty. of San Diego*, 2008 WL 4183913, at *6 (S.D. Cal. Sept. 9, 2008) ("A decedent's estate… requires a real party in interest, such as a duly appointed executor or administrator of the estate, for purposes of pursuing litigation."); *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach., Inc.*, 2006 WL 89867, at *2 (E.D. Mich. Jan. 13, 2006) (while a trust had Article III standing, it was not the real party in interest under Rule 17).

### 3. *Defects in capacity and real party in interest can be corrected under Rule 17*

Federal Rule of Civil Procedure 17(a)(3) governs the procedure for substituting a proper plaintiff. Under Rule 17(a)(3):

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

"Crucially for statute of limitations purposes, the claim of the real party in interest therefore dates back to the filing of the complaint." *Cortlandt*, 790 F.3d at 421.

Courts have the power to allow substitution when a mistake has been made in naming the plaintiff, including failure to prosecute in the name of the real party in interest, lack of capacity, and lack of standing on some[3] of the claims. *See, e.g. Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21 (2d Cir. 1997) (allowing Rule 17(a)(3) substitution to join shareholders where the original plaintiff corporation lacked standing to pursue some of the claims and was not the real party in interest); *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004) (deceased plaintiff's "lack of capacity at the time the suit was filed does not prevent the substitution from relating back to the date the suit was filed under Rule 17(a)."); *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 464946, at *6 (S.D.N.Y. Feb. 25, 2009) ("[B]ecause Third–Party Plaintiffs are not administrators or executors of their deceased relatives' estates… Plaintiffs lack the capacity to bring, and have not satisfied a condition precedent to bringing, their third-party state law claims…. However, the Court grants Third–Party Plaintiffs leave, pursuant to Rule 17(a)(3), to join the real parties in interest, which would cure these defects in their claims.").

### 4. *Defendants' standing and jurisdictional arguments are unavailing*

Defendants' remaining arguments are unpersuasive. First, the defendants seem to equate the Estate's lack of capacity with a lack of standing and subject matter jurisdiction. This is incorrect: as discussed above, the concepts of capacity and standing are distinct. "Lack of capacity

---

[3] It is currently an open question in this Circuit whether a plaintiff who lacks standing on all claims at the outset of litigation can pursue substitution under Rule 17(a)(3). *See Cortlandt*, 790 F.3d at 423 ("The question whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to *all* of its claims… appears to be an issue of first impression in this Court…. We need not, however, resolve this question to dispose of [plaintiff's] request").

is generally not considered jurisdictional and is therefore waived if not specifically raised." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998).

Second, the defendants argue that the action was brought in the name of a "non-entity" (the Estate), so the case was a "nullity" and cannot be cured by amendment or waiver under Connecticut law. They cite several cases in support of that proposition. In *Am.'s Wholesale Lender v. Silberstein*, 87 Conn. App. 485, 489, (2005), for example, the Connecticut Appellate Court refused to allow substitution where a suit was brought under a "trade name," which "is not a recognized legal entity or person." The court explained, "[t]he named plaintiff in the original complaint never existed. As a result, there was no legally recognized entity for which there could be a substitute." *Id.* In *Jordan v. Metro-N. Commuter R.R. Co.*, 2015 WL 5684027 (D. Conn. Sept. 28, 2015), the court relied on Connecticut law to prohibit substitution of an administrator where the named plaintiff was already deceased at the time the complaint was filed, noting "under Connecticut law, this suit is void *ab initio*, and the Court lacks subject matter jurisdiction over it." *Id.* at *4. In *Estate of Boulais v. Boulais*, 1995 WL 55092, at *2 (Conn. Super. Ct. Feb. 3, 1995), the Connecticut Superior Court held that an "estate was not an entity authorized by law to bring this action. As the complaint is therefore a nullity, it cannot be saved by amendment."

Defendants' reliance on this Connecticut caselaw is misplaced. Contrary to their assertions, *federal*, not state, law controls whether to allow substitution under Rule 17(a)(3). "[T]here no longer is any doubt that a federal court may apply the substitution and relation-back provision of Rule 17(a)(3) in a diversity of citizenship case even though the law of the state in which the court is sitting would not allow relief." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1555 (3d ed.) (footnotes omitted). *See also Kuelbs v. Hill*, 615 F.3d 1037, 1041 (8th Cir. 2010) ("Although Arkansas law governed who the real party in interest [was]… federal law governs the substitution

8

procedure."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 2015 WL 7075812, at *9-14 (E.D. Pa. Nov. 13, 2015) (applying Rule 17 to allow late-appointed estate administrator to substitute because "the question of relation back is procedural and therefore properly analyzed according to federal practice," "Federal Rule 17(a)(3) is broad enough to control this dispute," and it "is not a violation of the Rules Enabling Act."); *Brohan on Behalf of Brohan v. Volkswagen Mfg. Corp. of Am.*, 97 F.R.D. 46, 49 (E.D.N.Y. 1983) ("Rule 17(a) applies to this case not by inference or analogy but by its 'plain meaning.' There is thus a 'direct collision' between the rule and what defendants argue is the [state] rule."). I therefore respectfully decline to follow *Jordan*, 2015 WL 5684027, and will not rely on state law to determine whether to allow substitution.

Federal law, in the form of Rule 17(a)(3), is "inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed," Fed. R. Civ. P. 17 Advisory Committee Note (1966), even in cases like this one that Connecticut law would treat as a "nullity." For example, unlike Connecticut courts, federal courts have allowed substitution where a case was brought under a trade name that was not a legal entity under state law. In *Corvello v. New England Gas Co.*, 2011 WL 3742005 at *3 (D.R.I. Aug. 23, 2011), the court rejected the claim that "because [the plaintiff, a trade name] lacks capacity to sue, by the same token, it also lacks capacity to amend its complaint," calling such an argument "metaphysical" and "counter to the letter of the Federal Rules, the spirit of notice pleading, and decades of federal jurisprudence." The court went on to allow substitution, reasoning that bringing the case in the name of the unincorporated "fictitious business name" rather than the actual corporation was just the sort of technical "misnomer or misdescription" and "honest mistake" that Rule 17(a)(3) and Rule 15(c) (concerning relation-back of amendments) were designed to correct. *Id. See also Prison Legal*

9

*News v. Bezotte*, 2015 WL 1646454 at *2-3 (E.D. Mich. Apr. 14, 2015) (Where defendants sought dismissal because the named plaintiff, Prison Legal News, was a "trade name" and "not a legal entity," "Rule 17 saves Plaintiff from dismissal of its claims based on the incapacity to sue.").

Similarly, the Tenth Circuit has allowed substitution under Rule 17(a)(3) where a wrongful death lawsuit was brought in the name of an already deceased individual. *Esposito*, 368 F.3d at 1277. The Tenth Circuit rejected the argument that "the attempt to bring the case in the name of a decedent was a nullity, which cannot be cured by substitution." *Id.* In allowing substitution, the court explained that "Rule 17(a) is designed to prevent forfeitures, and as such must be given broad application," and "[the federal rules support] permitting substitution notwithstanding [the plaintiff's] lack of capacity at the time the suit was filed." *Id.*

Federal courts have also allowed substitution to replace invalid estate administrators. In fact, one of the foundational cases underlying Rule 17 concerned an incorrectly appointed estate administrator. The 1966 Advisory Committee notes to Rule 17 state that Section (a)(3) was "intended to insure against forfeiture and injustice—in short, to codify in broad terms the salutary principle of *Levinson v. Deupree*, 345 U.S. 648 (1953)." *Levinson* involved an estate administrator who lacked capacity to sue because he was appointed in the wrong county; under Kentucky law, the administrator's appointment was void. While Kentucky law prohibited amendment of the complaint to allege the administrator's new, correct appointment, the Supreme Court "permitted [the plaintiff] to amend his libel so as to allege that appointment, at a time when the applicable statute of limitations would bar a new suit." *Levinson*, 345 U.S. at 652.   *See also Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 499 (E.D.N.Y. 1996) (not allowing for late appointment of estate administrator "would be contrary to the liberal policy underlying the Federal Rules of Civil

Procedure."); *Brohan,* 97 F.R.D. at 49 ("Plaintiff's lateness in obtaining and pleading her appointment as executrix is the kind of technical mistake apparently contemplated by Rule 17(a).")

Finally, to the extent the defendants rely on Connecticut law for the proposition that estates lack standing generally, it is worth emphasizing that "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry,* 133 S. Ct. 2652, 2667 (2013). Here, while the Estate lacked capacity and was not the real party in interest, it did have standing under Article III of the U.S. Constitution: it sought redress in the form of damages from the death of Mr. Gilbert, an "injury in fact" "fairly traceable" to the actions of the defendants. *Lujan,* 504 U.S. at 561. *See also Estate of Reed v. Ponder Enterprises, Inc.*, 2012 WL 1031487, at *4 (M.D. Ala. Mar. 27, 2012) ("[A] personal representative sues not to obtain a remedy for an injury done to him or her personally; rather, a personal representative sues on behalf of an estate. In this case, the Estate itself could trace a direct injury to the alleged acts of the defendants. Thus, the Estate has standing…. the Estate's ability to assert the claims in the amended complaint is not a question of standing, but of capacity."); *Ralph Gonnocci*, 2006 WL 89867, at *2 (while a trust was not the real party in interest, it did have Article III standing: "[a] party may have standing but, pursuant to the governing law, may not be the proper party to bring a lawsuit.").

### 5. *Substitution is warranted in this case*

In this case, substitution is clearly warranted under Rule 17(a)(3). Although a district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party, there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics*, 106 F.3d at 20. "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the

participants." *Id.* Courts should also consider whether the plaintiffs acted in bad faith and whether substitution would prejudice to the defendants. *Cortlandt*, 790 F.3d at 422.

Substituting the Estate administrators for the Estate is just the sort of formal, technical fix contemplated by the Federal Rules, similar to correcting the "misnomer" of using a trade name instead of a corporate name. [4] There is no indication whatsoever of bad faith, and defendants are not prejudiced as they had clear notice of the claims against them in the initial complaint. Prohibiting amendment and substitution in this case would elevate form over substance and would be contrary to the spirit of the Federal Rules of Civil Procedure.

## IV.   Rule 12(b)(6) Motions to Dismiss

### A.  Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Discussion

#### 1.  Medical Opinion Letter

Dr. Cronin-Vorih and the Hospital Defendants argue that the complaint against them should be dismissed because the plaintiffs failed to attach an adequate opinion letter, as required

---

[4] I also note that this case differs from my opinion in *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, 2016 WL 3962767, at *14 (D. Conn. July 21, 2016), where I held that pleading an entirely new assignment was more than a merely formal alteration of the complaint.

by Conn. Gen. Stat. § 52-190a. That statute provides that plaintiffs who bring a negligence action against a health care provider "shall obtain a written and signed opinion of a similar health care provider." *Id.* Dr. Cronin-Vorih argues that, while she was Board certified in emergency medicine, the doctor whose opinion letter was attached to the original complaint was only certified in family medicine and, therefore, was not a "similar health care provider."

The Connecticut Supreme Court has held that the failure to attach to a medical malpractice complaint an opinion letter satisfying Conn. Gen. Stat. § 52-190a creates a defect in the process served on the defendant and thus deprives the court of personal jurisdiction over him. *Morgan v. Hartford Hospital*, 301 Conn. 388, 402 (2011). I need not decide whether to analyze this issue in terms of the personal jurisdiction of this federal court under Fed. R. Civ. P. 12(b)(2) or whether to treat the allegedly inadequate opinion letter as a pleading flaw under Rule 12(b)(6). Nor do I need to decide the broader question whether the requirements of § 52-190a apply to state law claims in federal court at all. *See Gullinari v. Kloth*, 148 F. Supp. 3d 202, 207 n.1 (D. Conn. 2015). That is so because both Connecticut and federal courts allow amendment in this situation, *see* Fed. R Civ. P. 15 (requiring courts to give leave to amend "freely… when justice so requires"); *Gonzales v. Langdon*, 161 Conn. App. 497, 510 (2015).

Accordingly, I allowed the plaintiffs to amend the complaint, and the opinion letter now states that the issuing doctor has "been board certified in Emergency Medicine since 2000." (ECF No. 59 at 49.) Plaintiffs also submitted an affidavit from the doctor to that same effect and a print-out of the doctor's certification in Emergency Medicine from the American Board of Physician Specialties. (ECF No. 35-3.) This additional information fully addresses the alleged defect identified by Dr. Cronin-Vorih and the Hospital Defendants in their motions to dismiss.

2. *Hospital Defendants' Liability*

Separately, the Hospital Defendants argue that they are not directly liable for medical malpractice or wrongful death, because Dr. Cronin-Vorih is the only person named in the complaint who allegedly breached the standard of care, and the plaintiffs do not allege wrongdoing by any other hospital staff, or the hospital directly. I agree. As the plaintiffs acknowledged at oral argument, the claims of wrongful death and medical malpractice brought against the Hospital Defendants focus exclusively on the alleged conduct of Dr. Cronin-Vorih. Therefore, the hospital is liable only to the extent it is vicariously liable for Dr. Cronin-Vorih's actions.

The Hospital Defendants also argue that the complaint does not state a claim of vicarious liability, because Dr. Cronin-Vorih was not acting as their actual or apparent agent.[5] First, the plaintiffs have conceded that there is no basis on which to hold Lawrence and Memorial Corporation liable and agreed to remove them from the complaint. However, the plaintiffs *have* stated a plausible claim against Lawrence and Memorial Hospital to survive the motion to dismiss phase. The three elements required to show the existence of an actual agency relationship in Connecticut are: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 543 (2006). Plaintiffs allege that Dr. Cronin-Vorih was an employee of Lawrence and Memorial Hospital, attended to Mr. Gilbert in the hospital's emergency room with other hospital staff, and that there

---

[5] I note that the Hospital Defendants raised this agency argument for the first time in their reply brief, in violation of Local Rule 7(d), which states that reply briefs "must be strictly confined to a discussion of matters raised by the responsive brief and must contain references to the pages of the responsive brief to which reply is being made." I had earlier granted the motion to preclude plaintiff's sur-reply brief, but in light of the Hospital Defendants' own violation of Local Rule 7(d), I now VACATE that portion of my order. (ECF No. 52.)

was an understanding that the hospital was in control. (ECF No. 56 ¶¶ 5, 40-44.) Drawing reasonable inferences in the plaintiffs' favor, this states a claim of an actual agency relationship between Dr. Cronin-Vorih and Lawrence and Memorial Hospital, and I need not reach the arguments about apparent agency.  It may well be that the facts will not prove an agency relationship in this case, but the pleadings state a claim sufficient to survive the motion to dismiss.

## V.   Motions to Sever

### A.  Legal Standard

Under Federal Rule of Civil Procedure 21, a court "may sever any claim against a party." The decision whether to grant a motion to sever is "committed to the sound discretion of the trial court," and in making that decision, courts consider and weigh several factors, including whether: "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) … settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012) (citation and quotation marks omitted).

### B.  Discussion

Dr. Cronin-Vorih and the Hospital Defendants seek to sever the claims against them from the claims against the Police Defendants, for purposes of discovery and trial. After weighing the parties' arguments, I have determined that the factors weigh against severance at this time.

To begin with, the claims do arise out of the same transaction or occurrence. As the court in *Costello* explained, "'[t]ransaction' has been interpreted as a flexible term that may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Costello*, 888 F. Supp. 2d at 263 (citation and quotation marks

omitted). This case involves a connected series of events during a less than twenty-four hour period in October 2014, beginning with Mr. Gilbert's initial arrest, continuing with his admission to Lawrence and Memorial Hospital and his subsequent discharge into police custody, and ending back in the hospital, where he was pronounced dead.

Next, although the legal issues surrounding the medical malpractice and excessive force claims are certainly very different, the claims do share many common questions of fact, including Mr. Gilbert's behavior, his physical and mental state, and the communications between police officers and hospital staff. The events at the police station are relevant to the plaintiffs' argument that Dr. Cronin-Vorih's breach of the standard of care was the proximate cause of Mr. Gilbert's death. And those same events could prove relevant to defenses by Dr. Cronin-Vorih and the Hospital Defendants, including the potential argument that the police officers' actions were a superseding cause of Mr. Gilbert's death. In Connecticut, "the doctrine of superseding cause is limited to situations in which an unforeseeable intentional tort, force of nature or criminal event supersedes the defendant's tortious conduct." *Archambault v. Soneco/Ne., Inc.*, 287 Conn. 20, 44 (2008).

These common questions could easily involve overlapping fact and expert witnesses and documentary proof, such as medical experts to testify to Mr. Gilbert's condition, and witnesses to describe Mr. Gilbert's behavior and the circumstances of his death. I agree with Dr. Cronin-Vorih and the Hospital Defendants that not all witnesses and proof would overlap, and in particular that fact and expert testimony about Dr. Cronin-Vorih's treatment decisions would not be relevant to the excessive force claim. On balance, however, the overlap is substantial enough that judicial economy would be best served by proceeding with the claims together, at least for purposes of discovery.

Finally, Dr. Cronin-Vorih and the Hospital Defendants have argued that they will be unfairly prejudiced at trial if the motions to sever are not granted. This is the argument that gives me most pause. A joint trial may be prejudicial and lead to confusion of the jury when the case is complex and the claims involve "separate witnesses, different evidence, and different legal theories and defenses," or when there is a risk of "guilt by association and spillover prejudice." *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 171 (S.D.N.Y. 2009) (citations and quotation marks omitted). I agree that there is a risk of prejudice of proceeding with both the medical malpractice and excessive force claims, in light of the growing national conversation about violence against people of color by the police, and given that the jurors will likely be shown upsetting video footage of Mr. Gilbert's death, recorded at the police station. This potential prejudice to Dr. Cronin-Vorih and the Hospital Defendants may be outweighed by the other factors that favor proceeding with a joint trial, but that is premature to determine before development of a factual record. These prejudice concerns do not apply to discovery, and any defendant may renew its request for a separate trial after discovery has concluded.

## VI.    Conclusion

For the foregoing reasons, the motions to dismiss asserting lack of subject matter jurisdiction and lack of an adequate medical opinion letter (ECF Nos. 26, 57, 58, 62, 63, 64) are DENIED. The Hospital Defendants' motion to dismiss regarding liability (ECF No. 29) is GRANTED in part and DENIED in part: the case against Lawrence and Memorial Hospital may proceed on a theory of vicarious, not direct, liability, and the case against Lawrence and Memorial Corporation is dismissed.

The motions to sever (ECF Nos. 39, 40) are also DENIED. The denial of the motions to sever is without prejudice with regard to severing the trial.  The parties should continue with joint discovery.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, USDJ

Dated:          Hartford, Connecticut
                February 21, 2017