UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ESTATE OF LASHANO GILBERT          3:16-CV-00241 (MPS)
*Plaintiff*

v.

NEW LONDON POLICE DEPARTMENT, LAWRENCE & MEMORIAL HOSPITAL, INC., CITY OF NEW LONDON, DR. DEIRDRE CRONIN-VORIH A/K/A DR. DIEDRE CRONIN, OFFICER PATRICIA TIDD, OFFICER MELISSA SCHAFRANSKI-BROADBENT, SERGEANT SCOTT JOHNSON, SERGEANT KRISTY CHRISTINA, OFFICER KURT LAVIMONIERE, OFFICER DOREEN COE, OFFICER RICHARD CABLE, OFFICER WAYNE NEFF, OFFICER CHRISTOPHER BUNKLEY AND OFFICER CHRIS WHITE A/K/A OFFICER CHRISTOPHER WHITE
         *Defendants*          November 13, 2018

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE RE: THE CAUSE OF DEATH OF LESHANO GILBERT**

The eight remaining New London Police department Defendants[1] respectfully move this Court to exclude any testimony or evidence that the actions of the New London Defendants was a substantial factor in the death of Lashano Gilbert as no expert has offered such an opinion and it is outside of the knowledge of the average juror. The forensic expert disclosed

---

[1] Specifically Schafranski-Broadbent, Johnson, Lavimoniere, Coe, Cable, Neff, Bunkley And White.

by the Plaintiffs testified at his deposition that it is unlikely Mr. Gilbert would have died solely from police action.  Although a jury could view the videos of the altercation at the police station and conclude the officers involved used more force than necessary, they cannot make the leap that the force used was a substantial cause of Mr. Gilbert's death without an expert's assistance, and such an expert opinion does not exist in this case.

I.   **FACTS:**

Leshano Gilbert died while in police custody on October 4, 2014.  His death followed an earlier arrest by the New London police, a trip to Lawrence + Memorial Hospital in New London, his release from the hospital and a violent altercation in which Mr. Gilbert attacked police in the booking area of the New London Police jail and engaged in a physical struggle with police.  Part of this case involves a claim against various New London police officers for excessive force and failure to intervene.

II.  **LEGAL STANDARD:**

A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine. See *Luce v. United States*, 469 U.S. 38, 41, n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Indeed, "[t]he purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996) (internal quotation marks omitted).

### III. ARGUMENT:

#### A. Expert Testimony Is Needed To Establish A Cause Of Death

The Second Circuit sets out the necessity for expert testimony to assist the jury in establishing a cause of death:

> It is well settled that expert testimony is unnecessary in cases where jurors "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (internal quotation marks omitted). Where, however, the nexus between the injury and the alleged cause would not be obvious to the lay juror, "[e]xpert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury." *Moody v. Maine Cent. R.R. Co.,* 823 F.2d 693, 695 (1st Cir.1987). In a case such as this, where an injury has multiple potential etiologies, expert testimony is necessary to establish causation, even in view of plaintiff's reduced burden to prove causation.[2] *See Claar v. Burlington N. R. Co.,* 29 F.3d 499, 503–04 (9th Cir.1994) (affirming district court's grant of summary judgment following plaintiff's failure to proffer admissible expert testimony on the issue of causation in a case brought under the Federal Employers' Liability Act); *Moody,* 823 F.2d at 695 (affirming the district court's grant of summary judgment to defendants when plaintiff failed to proffer admissible expert testimony linking workplace harassment to emotional trauma).

*Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004).

#### B. The Only Force Remaining At Issue Is The Restraining Of Mr Gilbert On The Floor

This case has already been subject to several motions and decisions by this Court. In an objection to a prior Motion for Summary Judgment by these defendants the Plaintiffs admitted that some force was necessary to respond to Mr. Gilbert's attack on the police and only argued

---

[2] *Willis* was a Jones Act case with a relaxed burden of proof, not present in the instant action.

that the force used to hold him on the floor was excessive (ECF 115 at 12).  This concession was recognized by the Court in its ruling on that Motion for Summary Judgment, especially in light of the Plaintiffs' own expert stating the amount of force used in subduing Mr. Gilbert was reasonable.  (ECF 126 at 20).  Any pepper spray and the Taser use had already occurred by this point.  There is no allegation that any other force was used, other than holding Mr. Gilbert down, during the relevant times of the altercation.

### C. The Plaintiff's Expert Does Not Hold An Opinion That Police Action Was A Substantial Factor In Mr. Gilbert's Death.

In this case there is no expert disclosed that offers an opinion that the actions of the police defendants was a substantial factor in causing Mr. Gilbert's death.  The Plaintiff has disclosed Dr. Charles Catanese, a forensic pathologist.  His report includes the following paragraph concerning Mr. Gilbert's cause of death:

> There are several physiologic processes at work with this case that are known to increase the risk of sudden [sic] due to fatal cardiac arrhythmia. Physical altercations are associated with increased catccholamine including adrenaline as part of the light or flight response which causes increased heart rate, blood pressure that places increased stress on the heart. Physical activity with struggle will increase oxygen demand and restraint can decrease effective breathing by interfering with chest expansion during breathing. This is associated with decreased oxygen up take leading to hypoxia and increased products of metabolism in the blood leading to acidosis, increased body temperature and dehydration. Sickle cell disease involves an abnormality of hemoglobin where red blood cells change shape and become sickle shaped instead of remaining biconcave. Sickling occurs to produce "crisis" under certain conditions including hypoxia, acidosis, dehydration and heat stress. Exertional sickling of red blood cells causes them to form obstructions in blood vessel decreasing blood flow and further exacerbating more hypoxia and sickling which can lead to sudden death. There is a well-documented association between strenuous exercise and sickle cell trait leading to exercise related sudden death. Cardiac hypertrophy or enlargement of the heart is associated with increased risk of fatal arrhythmia. He

> also had a history of mental illness with psychosis that was likely schizophrenia. Schizophrenia has been linked to an increased risk of sudden cardiac death.
>
> It is my opinion that the physical altercation in conjunction with psychosis and sickle cell hemoglobinopathy lead to fatal cardiac arrhythmia and death. This opinion is based on my experience, knowledge and education, and are to a reasonable degree of medical certainty. I reserve the right to amend my report upon receipt of new information.

(See Exhibit A, Expert report and disclosure)

This opinion was clarified at his deposition. When he was asked whether Mr. Gilbert would have died solely from the actions of the police, he thought it very unlikely:

> Q.   Just finishing your report, can you rule out that the encounter Mr. Gilbert had with the police including the physical altercation with the various attendant events, can you rule out that encounter, absent psychosis or sickle cell hemoglobinopathy, resulted in a fatal cardiac arrhythmia and subsequent death; can you rule it out?
>
> A.   I cannot rule it out 100 percent but I think it would be extremely more unlikely.
>
> Q.   Why do you say that?
>
> A.   Because it just doesn't happen in the -- unless there was an underlying cardiac anomaly or reason for him to have a fatal arrhythmia, it would be very unusual whereas it's well documented with acute psychosis. And then throwing the sickle cell hemoglobinopathy on top of it would only make it worse.

(Exhibit B, p. 117).

If the encounter with police alone was extremely unlikely to lead to death, it cannot be a substantial factor in causing Mr. Gilbert's death. The expert had been asked what he believed were the contributing factors that caused Mr. Gilbert's death:

> Q.   Are you able to parse out the respective contributing factors here?
>
> A.   Yes.

**5**
Hassett & George, P.C.
945 Hopmeadow Street, Simsbury, CT 06070   (860) 651-1333   facsimile (860) 651-1888   Juris 407894

> Q. Why don't you do that for us.
>
> A. So you have a physical altercation which is exerting oneself significantly which will create a hypoxic or decreased oxygen, heavy breathing increased the acidosis in the blood.  All of these things are associated with causing a sickling effect.  The restraint is part of the struggle and the restriction of movement.  The electric shock giving -- even though very rarely can cause the heart to go into arrythmia, while the shock is being performed it can tighten the muscles and prevent breathing which would further cause hypoxia.  And then with the pepper spray, it's very difficult to breathe sometimes when you get pepper sprayed in the face.  Not only the burning to the eyes which is painful and causing the heart rate to increase, it can cause a vasospasm or the airway to close up and decreased breathing.  And to add this on during an acute psychosis is very dangerous because you have a set up for an excited delirium type picture where you have excessive catecholamine input throughout the body and the combination of the hypoxia, the pain, the physical straining and the acute psychosis is a setup for a fatal arrhythmia in the heart.  The sickle cell hemoglobinopathy in times of great stress would most likely manifest and that's supported by the congestion of the blood vessels with the sickle cell as well.

(Exhibit B, p. 93-4).  Nothing in the expert's testimony identifies the police actions in restraining Mr. Gilbert on the floor and any pressure applied to his body as a contributing factor in Mr. Gilbert's death.

Defendants in section 1983 actions, like tort defendants, are responsible for the "'natural consequences of their actions.'"  *Higazy v. Templeton,* 505 F.3d 161, 175 (2d Cir.2007) (quoting *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). "[I]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury."  *Gierlinger v. Gleason,* 160 F.3d 858, 872 (2d Cir.1998) (citations omitted).

"To recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by a constitutional violation." *Gibeau v. Nellis*, 18 F.3d 107,

110 (2d Cir. 1994). As Judge Arterton explained:

> "[I]n all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *see Rahman v. Fisher*, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights." (citing *Martinez v. California, AAA* U.S. 277, 285 (1980)). "Proximate cause analysis under Section 1983 incorporates common-law tort causation principles." *Rahman*, 607 F. Supp. 2d at 584 (citing *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007)); *see also Monroe v. Rape*, 365 U.S. 167, 187 (1961) (Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions").
>
> "To establish causation ..., a plaintiff generally must show that the defendant's conduct was a 'substantial factor in bringing about the harm.'" *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006) (quoting Restatement 2d of Torts § 431(a)). "'Evidence which presents no more than a choice of probabilities is not deemed substantial enough to warrant submission of a case to the jury. Liability cannot be predicated upon mere conjecture or speculation as to the proximate cause of damage.'" *Armstrong v. Commerce Tankers Corp.*, 311 F. Supp. 1236, 1240 (S.D.N.Y. 1969) *affd*, 423 F.2d 957 (2d Cir. 1970) (quoting *Dayton Veneer & Lumber Mills v. Cincinnati, N.O. & T.P. Ry. Co.*, 132 F.2d 222, 223 (6th Cir. 1942)); *see also* Restatement 2d of Torts § 433B(1) cmt. a ("[A plaintiff] must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."). "The term 'proximate cause' is," in other words, "shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability.... Because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2637 (2011) (internal quotation marks, alterations, and citations omitted).

*Beard v. Town of Monroe*, No. 3:13CV1714 (JBA), 2015 WL 8023632, at *11 (D. Conn. Dec. 4, 2015), aff'd, 666 F. App'x 62 (2d Cir. 2016).

   **D. No Expert Has Offered An Opinion That Asphyxiation Was A Significant Factor**

**In Mr. Gilbert's Death**

Dr. Catanese was questioned specifically about Asphyxia and if it contributed to Mr. Glbert's death:

Q.   Can asphyxiation result in hypoxia?

A.   Yes.

Q.   Is it your opinion that's what caused hypoxia in this case?

A.   From my knowledge of the case I can say it's possible.  I don't have a lot of specific knowledge about exactly what the restraining was like.

Q.   Okay.  So, for example, you understand in this your stead, you don't have the specific details of the events that happened at the police station; correct?

A.   That's correct.  I have some knowledge of it by what's in the autopsy report.  I know there was a restraining but I don't know specifically how it was done.  I know there were bruises, some of which were to the person's back, and I think that I was told there was a cover put over the decedent's head which might cause some decreased ability to breathe.  And also the tasering that occurred too can cause difficulties with breathing.

(Exhibit B, pp. 9-10)

Much of his uncertainty can be traced to the very limited amount of material he was given to review, which consisted solely of the autopsy report from the medical examiner and the autopsy photographs.  (Exhibit B, p. 10).  Although he was given a verbal summary of the events involved by Attorney Johnson, they did not play a factor in any of his opinions.  (Id. p. 16).  There is no indication he ever reviewed the videos of the original arrest or of the subsequent altercation at the police station.  The autopsy report, Exhibit C, makes no mention of what occurred at the police station, nor any mention of what may have occurred during Mr. Gilbert's prior arrest.

During the deposition it became clear the expert doesn't know whether or not Mr. Gilbert actually experienced any forces that would interfere with his breathing:

Q. And neither that report has information, nor do you have information, on for example, the precise manner in which Mr. Gilbert experienced asphyxiation; am I correct?

A. Yes.

Q. I'm correct on that?

A. Yes. All I can say is I saw there was bruising to the back. I don't know exactly how that happened. If one was to tell me people were kneeling on his back it would indicate to me that at some point there was compression.

Q. It's consistent with those findings?

A. It's consistent.

Q. But it doesn't definitively tell one whether or not that occurred; correct?

A. Exactly.

The examiner's report documented red abrasions to Mr. Gilbert's upper right back, but makes no mention of how or when it occurred and does not characterize it as a bruise or contusion. (Exhibit C). Since the only documents relied on by the expert were the autopsy report and pictures, he has no factual basis to comment on the source, timing or implications of the bruising he mentions.

The expert was told a towel was placed over Mr. Gilbert's face, but he lacked any knowledge of the specifics or facts surrounding it:

Q. So in this case you told Mr. Lyons that you don't know for instance if Mr. Gilbert had a towel placed over his face; correct? You didn't know that, right?

A. Yeah, I didn't know exactly what was obstructing the airway or how tight

>   the fabric was or how tight the towel was placed --
>
>   Q.   Or how long it was placed on him; correct?
>
>   A.   And that would help a lot to know all that and --
>
>   Q.   Those facts would be significant; would they not?
>
>   A.   Yes.

(Exhibit B, p. 138).

The autopsy report (Exhibit C), makes no mention of any towel or mask.  Since the expert was only relying on the report, the information available to the expert did not inform him of the amount of force used by the defendants or any specific actions they took with a towel or mask.  He had no specific information as to how a towel or mask might have been applied to Mr. Gilbert and can have no opinion as to the results of using such a mask.

Although the Court, in a prior ruling on a Motion for Summary Judgment, commented on the possibility that the police action in putting weight on Mr. Gilbert could have interfered in his breathing, and placing a towel over his face might have led to suffocation (ECF 126 at 23), no expert has offered an opinion or testimony that such actions could lead to a delayed death later in the ambulance.[3]

The expert completely agrees with the autopsy report authored by Dr. Gill and does not hold any opinions not contained in that report.  (Exhibit B at p. 39).  The autopsy report never mentions suffocation, asphyxiation or any restriction to Mr. Gilbert's breathing.  It includes the

---

[3] There is no evidence that Mr. Gilbert was deceased prior to be placed in the ambulance.

**10**

term "restraint," but no explanation as to how that phrase is used or what it means.

## IV.     CONCLUSION:

No expert states that the police action in holding Mr. Gilbert down after his violent outburst at the New London police station was a substantial factor in causing Mr. Gilbert's death and they only way for a jury to make such a finding is through speculation.  This is not a case that involves a shooting or other clearly traumatic event.  The cause of death is more subtle and not extremely clear.  The plaintiffs' expert lists numerous items he feels could have contributed to Mr. Gilbert's death, but does not pick out the actions of the police in holding down Mr. Gilbert.  Lacking such expert assistance it is improper for the jury to reach such a conclusion.  Since no expert has been disclosed to support such a contention, the New London Defendants respectfully move this Court to exclude any testimony or argument that the actions of the police were a substantial factor in the death of Mr. Gilbert.

THE DEFENDANTS  
BY /s/  
David C. Yale  
Federal Bar #ct26912  
Hassett & George, P.C.  
945 Hopmeadow Street  
Simsbury, CT 06070  
(860) 527-0353  
dyale@hgesq.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ESTATE OF LASHANO GILBERT | 3:16-CV-00241 (MPS) |

*Plaintiff*

v.

NEW LONDON POLICE DEPARTMENT, LAWRENCE & MEMORIAL HOSPITAL, INC., CITY OF NEW LONDON, DR. DEIRDRE CRONIN-VORIH A/K/A DR. DIEDRE CRONIN, OFFICER PATRICIA TIDD, OFFICER MELISSA SCHAFRANSKI-BROADBENT, SERGEANT SCOTT JOHNSON, SERGEANT KRISTY CHRISTINA, OFFICER KURT LAVIMONIERE, OFFICER DOREEN COE, OFFICER RICHARD CABLE, OFFICER WAYNE NEFF, OFFICER CHRISTOPHER BUNKLEY AND OFFICER CHRIS WHITE A/K/A OFFICER CHRISTOPHER WHITE                                                                 November 13, 2018

*Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on the date first above a copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION IN LIMINE RE: THE CAUSE OF DEATH OF LESHANO GILBERT** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

BY /s/  David C. Yale