UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ALBERTHA FLETCHER and DONNA SMITH, Administrators of the Estate of Lashano Gilbert Plaintiffs, v. CITY OF NEW LONDON, et al. Defendants. | No. 3:16-cv-241 (MPS) |
|---|---|

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This case arises out of the death of Lashano Gilbert while in police custody on October 4, 2014, in New London, Connecticut. The plaintiffs, Alberta Fletcher and Donna Smith, are the administrators of Mr. Gilbert's estate. They bring claims against several defendants, including claims of medical malpractice and wrongful death against a doctor, Deirdre Cronin-Vorih. Dr. Cronin-Vorih treated Mr. Gilbert in the emergency room after his arrest on October 3, 2014, but before he was returned to police custody and ultimately died. Now before me is Dr. Cronin-Vorih's motion for summary judgment. (ECF No. 131.) She argues that the plaintiffs have failed to raise a genuine dispute of material fact as to whether she proximately caused Mr. Gilbert's death because they do not intend to call an expert to testify on causation. Because I conclude that expert testimony is not required to establish proximate causation in this case, the motion is DENIED.

I assume familiarity with the record in this case, including my previous ruling on summary judgment (ECF No. 126) and the parties' Local Rule 56(a) statements, (ECF Nos. 131-3; 137-3). I also assume familiarity with the standard on summary judgment, which I laid out in detail in my previous ruling. (ECF No. 126 at 8–9.) In brief, summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is

1

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must "view the evidence in the light most favorable" to the non-moving party, *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks omitted), and "resolve all ambiguities and draw all inferences in [its] favor," *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

Dr. Cronin-Vorih argues that the plaintiffs cannot establish a causal connection between her alleged deviation from the standard of care and Mr. Gilbert's death because they have not identified an expert who will testify about proximate cause. To establish proximate causation, the plaintiffs must prove that Dr. Cronin-Vorih's conduct was a "a substantial factor in producing [Mr. Gilbert's] injury." *Poulin v. Yasner*, 64 Conn. App. 730, 735 (2001) (quotation marks omitted). The key question under the "substantial factor" test is "whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." *Id*. This Court has explained that expert testimony is often necessary in medical malpractice cases "because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Law v. Camp*, 116 F. Supp. 2d 295, 305 (D. Conn. 2000), aff'd, 15 F. App'x 24 (2d Cir. 2001) (quotation marks omitted). In this case, the plaintiffs plan to call Dr. Peter Petropoulos to testify that Dr. Cronin-Vorih deviated from the standard of care in treating Mr. Gilbert. (*See* ECF No. 137-2 at 2.) Dr. Petropoulos is also prepared to testify that Dr. Cronin-Vorih's failure to meet the standard of care "ultimately caused the death of Lashano Gilbert." (*Id.* at 5.) Dr. Cronin-Vorih asserts that Dr. Petropoulos's opinion is mere *ipse dixit* and is insufficient to raise a genuine question of material fact about causation. (ECF No. 131-1 at 17–20.)

I need not determine whether Dr. Petropoulos's opinion on causation is valid, however, because I conclude that expert testimony on causation is not required here. Courts in Connecticut

2

do not require expert testimony on causation where the causal connection in question "falls within the common knowledge of the lay person." *Camp*, 116 F. Supp. 2d at 305. For example, expert testimony is not necessary where the medical condition is "obvious or common in everyday life," or where "the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief." *Kalams v. Giacchetto*, 268 Conn. 244, 249 n.4 (2004).

Evidence about the events leading up to Mr. Gilbert's death, together with Dr. Petropoulos's expert testimony on the standard of care and Mr. Gilbert's condition when he was discharged from the emergency department, is sufficient to allow a reasonable lay juror to conclude that Mr. Gilbert's death was the foreseeable result of Dr. Cronin-Vorih's deviation from the standard of care. Mr. Gilbert was arrested on October 3, 2014 after he jumped "head first" through the driver's side window of a woman's car while "speaking unintelligibly" and making "stabbing motions" at her. (Second Amended Complaint, ECF No. 56 at 7 ¶ 17–21; Defendant's Local Rule 56(a)(1) Statement, ECF No. 131-3 ¶ 2–3.) The police report of the incident states that, when an officer arrived, Mr. Gilbert "leapt from the front seat of the [car] and ran directly at [the officer,] yelling incoherently and flailing his arms wildly." (ECF No. 137-2 at 53.) The officer stopped Mr. Gilbert by tasing him. (*Id.*) Four more officers assisted in subduing Mr. Gilbert as he was transported to the hospital. (*Id.* at 54). Based on this evidence, a reasonable juror could conclude, without expert testimony, that Mr. Gilbert was experiencing a serious mental health problem on October 3, 2014. He was delirious, combative, and potentially violent. Mr. Gilbert's bizarre and erratic behavior was obvious, and a juror would not need medical training to understand that he posed a potential threat to himself and others. Further, a juror could conclude that Mr. Gilbert's condition had caused him to attempt to physically attack a police officer, and that the officer had felt sufficiently threatened to warrant tasing Mr. Gilbert.

The plaintiffs' medical expert, Dr. Petropoulos, opines that Dr. Cronin-Vorih failed to meet the standard of care when she treated Mr. Gilbert in the emergency room after his arrest because she allowed Mr. Gilbert to be discharged to police while he was experiencing "ongoing delirium/alteration of mental status." (ECF No. 137-2 at 7–8.) When Mr. Gilbert arrived at the hospital, he "was initially not responsive to questions" and "alternated between periods of calmness and yelling, screaming, and thrashing." (ECF No. 131-3 ¶ 10.) Dr. Cronin-Vorih's emergency department report states that Mr. Gilbert was "extremely agitated" and he was "restrained to a stretcher given [the] risk of harm to himself and/or staff." (ECF No. 137-2 at 33.) Mr. Gilbert told hospital staff that his behavior was the result of a spell his aunt had placed on him. (ECF No. 137-2 at 33.) Although Dr. Cronin-Vorih's report states that, by the end of his stay, he was "stable to be discharged into the care of the police" (*id.*), Dr. Petropoulos opines that "there is no documented repeat examination by Dr. Cronin-Vorih that demonstrates that [Mr. Gilbert's] delirium had resolved by the time of discharge." (ECF No. 137-2 at 7.) Dr. Petropoulos identifies several steps that Dr. Cronin-Vorih should have taken to stabilize Mr. Gilbert and to uncover and address the underlying causes of his altered mental status before releasing him. (*Id.* at 6–8.) Based on this expert testimony, a reasonable juror could conclude that Dr. Cronin-Vorih knew or should have known that Mr. Gilbert still had an altered mental status, but she negligently failed to determine the cause or treat his altered mental status before discharging him to police. Further, a juror could find that Dr. Cronin-Vorih's failure to meet the standard of care created a risk that Mr. Gilbert would again attempt to physically attack police officers and would be injured as a result.

Finally, there is sufficient evidence in the record to raise a genuine dispute of fact about whether the harm Mr. Gilbert suffered "was of the same general nature as the foreseeable risk created by [Dr. Cronin-Vorih's] negligence." *Yasner*, 64 Conn. App. at 735. Specifically, a juror

4

could conclude that, as a result of Dr. Cronin-Vorih's negligence, Mr. Gilbert was still delirious after he was discharged and his delirium caused his confrontation with police. As Mr. Gilbert exited the hospital, police reports indicate that he asked an officer "to put a cover over his head . . . He said something about his Aunt being able to pull his hair out if [it was] not covered." (ECF No. 137-2 at 50.) A reasonable juror could find that Dr. Cronin-Vorih, who had just authorized his release, should have known he was still delusional. He continued to complain about his aunt trying to pull out his hair when he arrived at the station, but his aunt was never present. (*Id*.) He later tried to hang his jeans from a vent in the station and accused police of "putting poison into the air coming through the vent in an attempt to kill him." (ECF No. 137-2 at 56.) When police confronted Mr. Gilbert out of fear that he would attempt to hang himself with the jeans, he lunged at them, beginning the altercation that ended with his death. (Id. at 57–58; ECF No. 131-2 at 25.)

Overall, the evidence in the record would allow a reasonable lay juror to find that (1) Mr. Gilbert was suffering from paranoid delusions that caused him to attack a police officer before he was taken to the hospital on October 3, 2014; (2) Mr. Gilbert remained agitated at the hospital and Dr. Cronin-Vorih knew or should have known that he presented a potential threat to himself and others as a result of his altered mental status; and (3) Dr. Cronin-Vorih failed identify and address the underlying cause of Mr. Gilbert's delirium and discharged him to police while he still had an altered mental status. Especially because of his violent confrontation with the police before arriving at the hospital, of which Dr. Cronin-Vorih knew or should have known, a reasonable juror could conclude that Mr. Gilbert's subsequent altercation with police, resulting in his death, was a foreseeable consequence of Dr. Cronin-Vorih's deviation from the standard of care. This causal chain would not require a juror to draw any complex medical inferences. Mr. Gilbert engaged in a violent altercation before he was hospitalized. Dr. Cronin-Vorih allegedly failed to address the

underlying condition that caused him to initiate that altercation. It was reasonably foreseeable, then, that Mr Gilbert would initiate another violent altercation when discharged to the police. As a result, "the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief" without expert testimony. *Giacchetto,* 268 Conn. at 249 n.4; *see also Yasner*, 64 Conn. App. at 748 ("The third exception to a need for expert testimony in lost chance cases revolves around whether lay jurors can resolve the issue by use of their common knowledge.") Here, expert testimony is required to show that Dr. Cronin-Vorih breached the standard of care and that, when he left the hospital, Mr. Gilbert was in an altered mental state similar to the one he was in when he arrived. But expert testimony is not required to conclude that the harm he suffered was of the same general nature as that which was foreseeable from returning him to police custody in his altered mental state. Dr. Cronin-Vorih's motion for summary judgment is therefore DENIED.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, USDJ

Dated:      Hartford, Connecticut
            December 17, 2018